## LESLIE JULIAN AND PEARL A. JULIAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67071. Filed February 13, 1959.

*Richard W. Wilson, Esq.*, for the petitioners.
*John M. Doukas, Esq.*, for the respondent.

BRUCE, *Judge:* This proceeding involves a deficiency in income tax of $79,526.52 for 1953. The only issue is whether petitioner is entitled to deduct $117,677.11 as interest expense for 1953 pursuant to section 23 (b), I.R.C. 1939.

## FINDINGS OF FACT.

During the year in issue the principal petitioner, Leslie Julian, and his wife, Pearl, resided in Bristol, Connecticut. They filed a joint income tax return for the year 1953 with the district director of internal revenue for the district of Connecticut. Petitioners reported their income on the cash basis.

In 1953 petitioner was an executive and coowner of the Bristol Machine Tool Company, Inc. In 1953 he received salary and dividends from Bristol totaling $134,867.32, and had other income totaling $4,737.90. Petitioner was not a dealer in United States securities, and prior to 1953 had never made any substantial purchases of United States securities.

At all times pertinent hereto M. Eli Livingstone was a security dealer in Boston, Massachusetts, doing business in the form of a sole proprietorship under the name of Livingstone & Co. Gail Finance Corporation, hereinafter referred to as GFC, was a Massachusetts corporation allegedly doing business as a finance company in Harry N. Cushing's law offices at 70 State Street, Boston, Massachusetts. Cushing is a long-time friend and former law partner of Livingstone. At all times material hereto Cushing was president and treasurer of GFC.

Petitioner received information about the bond investment plan herein involved from Gustave Simons, his attorney, and after consulting with legal counsel and his C.P.A., embarked upon a series of transactions which *in form* were as follows:

On or about December 2, 1953, Livingtone & Co. loaned petitioner $80,000. The loan was unsecured, non-interest-bearing, and not evidenced by a written document. On or about December 3 petitioner purchased through Livingstone & Co. at 86⅞ $650,000-face-value United States Treasury 2¾ per cent bonds, due September 1961, with March 15, 1959, and subsequent coupons attached. Livingstone & Co. sold the bonds to petitioner in a short position as "principal" and did not charge petitioner a commission on the sale. The purchase price of the bonds was $564,687.50.

On December 3 petitioner borrowed $653,250 from GFC to finance his purchase of the Treasury bonds. Petitioner pledged the Treasury bonds as security for the loan from GFC, and executed a nonrecourse promissory note in favor of GFC. The note provided as follows:

$653,250.00

On September 15, 1958 I promise to pay to the Gail Finance Corp., a Massachusetts corporation at its principal office in Boston, Mass., (hereinafter referred to as the obligee) the sum of—

SIX HUNDRED FIFTY-THREE THOUSAND, TWO HUNDRED FIFTY AND 00/100 DOLLARS Interest in full in the amount of $117,677.11 having been prepaid by me; subject to the following rights and conditions, having deposited with the said obligee the following securities as collateral:

$650,000 U.S. Treasury 2¾% Notes of 9/15/61—(maturing in Sept. 1961 with March 15, 1959 and subsequent coupons attached.)

The undersigned gives to the obligee a lien against the securities pledged for the amount of the obligations set forth herein, and gives to the obligee the right to hypothecate and use the securities pledged for any purpose while so pledged. Said right is not to be inconsistent in any manner with the ownership by the undersigned of the said collateral, and with the right to the undersigned to obtain the return of the collateral at any time upon tender of payment of the principal and interest due hereunder.

The undersigned shall not be called upon nor be liable to furnish additional collateral to the obligee at any time.

The undersigned may anticipate payment, in whole or in part, at any time, of the amount due hereunder, and shall receive back a pro rated portion of the collateral so held; provided nevertheless that interest at the rate of 1% shall be charged pro rated against the amount or amounts so paid by anticipation.

All payments received by the obligee directly from or indirectly for the account of the undersigned shall be applied first to payment of interest and any balance thereof applied to payment of principal due hereunder as the obligor shall elect.

The undersigned shall not in any event be personally liable to pay any of the principal indebtedness hereof or interest arising hereunder (including the penalty interest of 1% per annum for prepayment) except from the proceeds from the sale of the said collateral deposited. Application of the proceeds from the sale of the said collateral shall be made by the obligee on the due date and shall be a full accord and satisfaction of any and all claims hereunder and act as a full and complete discharge of any and all liabilities of the undersigned.

This note shall be interpreted in accordance with a letter dated Nov. 18, 1953 signed by M. Eli Livingstone and Gail Finance Corp. and the said letter shall hereby be incorporated and made a part of this note.

This note has been entered into in the City of Forestville, and shall be construed and interpreted in accordance with the laws of the State of Connecticut.

[s] Leslie Julian (Seal)

This note and all of the terms and conditions hereof accepted this Dec. 3, 1953

GAIL FINANCE CORP.

[s] Harry N. Cushing

*Treasurer*

At the time GFC loaned $653,250 to petitioner it had only $1,381.65 cash on hand. GFC raised additional funds to loan petitioner by selling short to or through Livingstone & Co. the identical type and amount of bonds pledged to it by petitioner, for $564,687.50, the same price paid by petitioner.

On or about December 7 GFC sent petitioner a check for $88,562.50, an amount representing the difference between the purchase price of the bonds and its loan to petitioner. On or about December 10 petitioner repaid Livingstone & Co. the $80,000 he had borrowed.

Appropriate bookkeeping entries were made on the books of GFC and Livingstone & Co. to reflect the above-outlined transactions. Since GFC owed Livingstone & Co. $564,687.50 in behalf of petitioner, and since Livingstone & Co. owed GFC a like amount due to GFC's short sale to Livingstone & Co., the liabilities canceled

each other. No Treasury bonds were physically transferred between petitioner, Livingstone & Co., and GFC.

In arriving at his 1953 taxable income petitioner claimed an interest deduction in the amount of $117,677.11, representing prepaid interest on his loan from GFC. Respondent disallowed the above deduction, claiming it was not within the scope of section 23(b), I.R.C. 1939.

### OPINION.

The only issue is whether petitioner, pursuant to section 23(b), I.R.C. 1939,[1] is entitled to deduct $117,677.11 as interest paid on an indebtedness in 1953.

Petitioner and respondent agree that the transactions involved in the instant case are virtually identical to the transactions involved in *George G. Lynch*, 31 T.C. 990 (decided this day). Petitioner has raised no arguments which were not raised in *Lynch* with the exception of a reference to the recent case of *United States* v. *Bond*, 258 F. 2d 577 (C.A. 5, 1958). The *Bond* case involved the deductibility of interest on premium loan notes secured by the assignment of single premium annuity contracts, and is factually distinguishable from the instant case. See also *W. Stuart Emmons*, 31 T.C. 26 (1958), on appeal (C.A. 3), wherein, on facts somewhat similar to the facts in *Bond*, this Court reached a contrary conclusion; and *Karl F. Knetsch* v. *United States*, — F. Supp. — (S.D. Cal., Nov. 5, 1958).

We see no reason to reach a result here contrary to the result in *George G. Lynch, supra.*

*Decision will be entered for the respondent.*

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

(b) INTEREST.—All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from the taxes imposed by this chapter.