*Decision will be entered under Rule 50.*

JACOB A. GOLDFARB, BERTHA L. GOLDFARB, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66899. Filed December 24, 1959.

*Karl W. Windhorst, Esq.*, for the petitioners.
*Victor H. Frank, Jr., Esq.*, for the respondent.

MULRONEY, *Judge:* Respondent determined a deficiency in the petitioners' income tax for the year 1953 in the amount of $14,708.16. The only issue for decision is whether the petitioners are entitled to a deduction for the amortization of bond premiums under section 125(b) of the Internal Revenue Code of 1939 [1] measured by the excess of cost over the special redemption rate of $101.36, as contended by the petitioners.

---

[1] All section references are to the Internal Revenue Code of 1939, as amended.

## FINDINGS OF FACT.

Some of the facts have been stipulated and they are hereby incorporated by this reference.

Jacob A. Goldfarb and Bertha L. Goldfarb, husband and wife, are residents of New York City, New York. They filed a joint income tax return for the year 1953 with the district director of internal revenue for the Upper Manhattan District of New York. Jacob A. Goldfarb will hereinafter be called the petitioner.

Petitioner purchased through a broker on November 20, 1953, $200,000 face amount of Arkansas Power and Light Company first 4¼ per cent 30-year bonds (dated June 1, 1953) at 110, costing him $220,500; $20,000 face amount of identical bonds at 109⅝, costing him $21,975; and on November 23, 1953, $280,000 face amount of identical bonds at 111, costing him $311,500. The total cost of the bonds to the petitioner was $553,975, which included brokerage commissions of $1,250. The bonds will hereafter sometimes be called the Eighth Series bonds, or the Arkansas 4¼ per cent bonds. Arkansas Power and Light Company will hereafter be called Arkansas.

The purchase price in the amount of $553,975, plus accrued interest in the amount of $10,488.05, was paid by the petitioner in the following manner: By personal check in the amount of $74,463.05; and by obtaining a loan in the amount of $490,000 at 3½ per cent per annum from the First Wisconsin National Bank of Milwaukee, on petitioner's personal 6 months' note dated November 27, 1953, and the deposit as security of the $500,000 face amount of the Arkansas 4¼ per cent bonds. On May 27, 1954, petitioner borrowed $235,000 from the First National Bank of Kansas City on his personal 60-day 3 per cent note, and deposited as security $250,000 face amount of Arkansas 4¼ per cent bonds which had been transferred from the Wisconsin National Bank. On May 28, 1954, the petitioner borrowed $235,000 from the Citizens Fidelity Bank and Trust Company, of Louisville, Kentucky, on his personal 60-day 3 per cent note, and deposited as security $250,000 face amount of Arkansas 4¼ per cent bonds which had been transferred from the First Wisconsin National Bank. By May 28, 1954, the petitioner had paid off in full his note given to the First Wisconsin National Bank.

On June 16, 1954, the petitioner sold the $500,000 face amount of Arkansas 4¼ per cent bonds for $527,000, less commissions and selling expenses of $875. Petitioner reported a long-term capital gain on his income tax return for 1954 using a basis of $506,800 for the bonds.

The issuance and redemption of the Arkansas 4¼ per cent bonds were governed by the provisions of the Mortgage and Deed of Trust dated as of October 1, 1944, the Third Supplemental Indenture dated

as of October 1, 1949, and the Seventh Supplemental Indenture dated as of June 1, 1953.

The Arkansas 4¼ per cent bonds were redeemable on 30 days' call notice prior to their fixed maturity date at either (1) the general redemption price from general funds or (2) the special redemption price from certain special funds. Both the general and the special redemption prices decreased yearly. The general redemption price was $105.36 if the Arkansas 4¼ per cent bonds were called during the 12-month period ending May 31, 1954. The special redemption price was $101.36 if the bonds were called during the same period.

All of the issued and outstanding Arkansas 4¼ per cent bonds were redeemed by Arkansas at the general call price of $105.18 on April 18, 1955.

The Arkansas 4¼ per cent bonds were redeemable at the option of the company at the special call price only for cash if such cash were available in the sinking and improvement fund of the Arkansas 4¼ per cent bonds, the maintenance and replacement fund, or the fund for released property or fund for property taken by eminent domain in accordance with the provisions of the Mortgage and Deed of Trust and Supplementary Indentures.

Arkansas had the option to transfer certain cash to the maintenance and replacement fund, and the option to transfer certain cash to the sinking and improvement fund of the Arkansas 4¼ per cent bonds. Any cash available in these funds or in the released property fund and eminent domain fund could have been used to redeem by lot the Arkansas 4¼ per cent bonds. If Arkansas had exercised the options, it could have made available sufficient cash in the maintenance and replacement fund (or, to the extent permitted pursuant to article 2, section 2, of the Seventh Supplemental Indenture, in the sinking and improvement fund of the Arkansas 4¼ per cent bonds) or, if certain events had transpired, there might have been available sufficient cash in the released property fund or in the eminent domain fund which could have permitted Arkansas to redeem the Arkansas 4¼ per cent bonds pursuant to the terms of the Mortgage and Deed of Trust and Supplemental Indentures, and which could have resulted in the redemption at the special call price prior to December 31, 1953, of all the Arkansas 4¼ per cent bonds owned by the petitioner.

No cash was placed in the sinking and improvement fund for the Arkansas 4¼ per cent bonds during the time these bonds were outstanding. In lieu of the cash to be placed in the sinking and improvement fund, Arkansas elected other options, such as taking a credit for the amount of bonds, the authentication and delivery of which would have been delivered under the mortgage but which authentication and delivery had been waived. No cash was placed

in the maintenance and replacement fund of Arkansas during the time that the Arkansas 4¼ per cent bonds, or any of the other bond issues, were outstanding. In lieu of the cash requirements for the maintenance and replacement funds of the various series of bonds, including the Arkansas 4¼ per cent bonds, during the time that said bonds were outstanding, expenditures for maintenance, repairs, and gross property additions were certified by Arkansas. No property was released and no property was taken by eminent domain and, therefore, no cash was placed in the released property fund or property taken by eminent domain fund of the Arkansas 4¼ per cent bonds.

It was the practice of Arkansas to use its cash, with which it could have satisfied its obligations to the certain funds, in its substantial construction program.

No cash was placed in the general maintenance and replacement fund or in the sinking or improvement fund of the following first mortgage bonds issued by Arkansas during the time that these bonds were outstanding:

| | | | | | |
|---|---|---|---|---|---|
| 3⅛s | Series due | 1974 | 3⅝s | Series due | 1981 |
| 2⅞s | Series due | 1977 | 3½s | Series due | 1982 |
| 3⅛s | Series due | 1978 | 3¼s | Series due | 1984 |
| 2⅞s | Series due | 1979 | 3⅜s | Series due | 1985 |
| 2⅞s | Series due | 1980 | | | |

These issues are still outstanding and have not been redeemed at either their general or special call price.

The business of Arkansas was expanding. Its total electric operating revenues had more than doubled in the 10-year period ending with 1958. Its construction program was substantial. There was no likelihood that Arkansas would redeem its Arkansas 4¼ per cent bonds at the special redemption price in 1953.

Interest rates on utility bonds declined in 1953 and 1954.

Petitioner claimed a deduction of $47,175 on his 1953 income tax return for amortization of the bond premium paid on his purchase of the Arkansas 4¼ per cent bonds, based on the excess of the total cost of $553,975 over the total special redemption price of $506,800 ($101.36 per $100 face amount) specified for redemption during the 12-month period ending May 31, 1954. The respondent allowed the deduction for amortization of bond premium to the extent of $27,175 and disallowed the balance thereof amounting to $20,000.

### OPINION.

The only question is whether the petitioners are entitled to a deduction for amortization of bond premiums under section 125 equal to the excess of cost over the special redemption price. This exact question was recently decided by this Court in *Estate of A. Gourielli*,

33 T.C. 357, where we rejected the petitioner's contention that the amortization deduction under section 125 should be measured by the excess of bond cost over the special redemption price. That case is controlling here.

There is no compelling argument presented here for permitting the special redemption price to measure the total amount of premium to be amortized. Under the facts before us, the special redemption price is unrealistic. Here it can be said as was said in the *Gourielli* case that the record shows the bonds could not have been redeemed at the special redemption price at any time while petitioners owned them. Cash for such redemption could only come from certain specified funds, and the bonds in question were redeemable only if such cash were available. No cash was ever placed in any of the funds maintained by Arkansas for this purpose. Instead, Arkansas met its obligations as to these special funds under the pertinent mortgages and deeds of trust by selecting certain options open to it which did not involve cash. The business of Arkansas was expanding and it was engaged in a substantial construction program, and it was its practice to use its available cash for such program.

Under the authority of *Estate of A. Gourielli, supra*, we sustain respondent.

*Decision will be entered for the respondent.*