MAYSTEEL PRODUCTS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

**Docket No. 67105.** Filed March 17, 1960.

*William J. Willis, Esq.*, for the petitioner.
*Delman H. Eure, Esq.*, for the respondent.

WITHEY, *Judge:* The respondent has determined a deficiency in the income tax of petitioner for the fiscal year ended November 30, 1953, in the amount of $21,479.42. Petitioner claims an overpayment for that year in the amount of $85.37.

The issues for determination are (1) whether petitioner is entitled to a deduction of $12,250 for an amortizable bond premium in the manner provided by section 125 of the Internal Revenue Code of 1939 and (2) whether petitioner is entitled to the deduction of $17,131.49 for a gift to a charitable institution for that year.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are found accordingly.

Petitioner, Maysteel Products, Inc., is a corporation organized in 1936 under the laws of the State of Wisconsin with its principal office at Mayville, Wisconsin. It filed a Federal corporation income tax return for its fiscal year ended November 30, 1953, with the district director of internal revenue at Milwaukee, Wisconsin.

Maysteel Foundation, Inc., is a corporation organized under the laws of the State of Wisconsin by the stockholders of Maysteel Products for the purpose of receiving donations to be disbursed for religious, educational, and related purposes. During 1953 it was

exempt from Federal income tax under section 101(6) of the 1939 Code and contributions to the Foundation were deductible.

On September 22, 1953, petitioner purchased $100,000 principal amount, 3¾ per cent Appalachian Electric Power Company bonds due June 1, 1981. The purchase price of the bonds was 114⅛. The cost to petitioner was $114,125 principal, plus a commission of $500, and plus accrued interest of $1,218.75, or a total cost of $115,843.75. The bonds were subject to call for redemption by their issuer on 30 days' notice at 100 plus a special redemption premium of 2⅜ per · cent. Petitioner borrowed from the First National Bank of Scranton, Pennsylvania, $100,000 of the purchase price of the bonds and paid in cash $15,843.75 of the purchase price. It gave its promissory note in the amount of $100,000, dated September 30, 1953, due 35 days after date, with interest at 3¾ per cent, to the lending bank, which held the bonds so purchased as collateral security for the payment of the loan. On October 23, 1953, petitioner recorded on its books an amortization of the premium paid for the bonds referred to in the amount of $12,250, which represented the difference between the cost of the bonds (principal plus commission) $114,625 and the call price of the bonds $102,375. No other method of amortization was regularly employed by petitioner. On its income tax return for the year at issue petitioner deducted as a part of its general and administrative expenses the foregoing amount of $12,250 for amortization of bond premium.

On October 26, 1953, petitioner made a gift of the bonds to Maysteel Foundation, Inc., subject to the indebtedness remaining upon petitioner's promissory note to the First National Bank of Scranton. With respect to the gift, the petitioner reported on its income tax return a contribution made to the Foundation in the amount of $19,000 and by reason of the statutory limitation deducted $17,131.49 of that amount as a contribution.

On October 27, 1953, the Foundation sold the bonds for $119,000, plus interest in the amount of $1,572.92, less a commission of $500, and less Federal tax of $50, or a net amount of $120,022.92. On October 29, 1953, petitioner made an additional interest payment on the loan to the First National Bank of Scranton in the amount of $364.58.

The series of transactions above set forth constituted a single planned transaction entered into by petitioner with no intention that such transactions should produce a business profit, gain, or benefit other than that which might result from a deduction for bond premium amortization in accordance with sections 23 and 125 of the Code and a deduction for a contribution of its equity in the Appalachian bonds. Although the bonds did appreciate in value during the time they were held by petitioner, we find that petitioner

would have purchased the bonds whether or not they appreciated in value.

As of the date of its purchase of the bonds and throughout the period covered by the transactions here involved, petitioner's ultimate purpose and intention was to make a gift of its equity therein to the Foundation. The fair market value of the bonds on October 26, 1953, was not less than $119,000.

OPINION.

Petitioner has in our view purchased bonds at a premium price and has made a gift of its equity in the bonds to a charitable institution in the year at issue, all in conformity with the literal language of section 125 and in accordance with section 23(q), respectively, of the 1939 Code. It contends that, having done so, it is entitled to a deduction of its bond premium as fully amortized and a further deduction in the amount of $19,000 as a gift to charity represented by its equity in the fair market value of the bonds on the date of the gift.

Respondent takes the position that, even though the transactions are held to be in literal conformity with sections 125 and 23(q), they are but steps in a single planned transaction carried out for the sole purpose of obtaining a tax benefit and are not within the intent of Congress in enacting those sections.

Petitioner rests its case largely upon the line of authority which establishes the principle that a taxpayer has the right to conduct his affairs in such a manner as to minimize and even avoid taxation if legally permissible. *Chamberlin* v. *Commissioner*, 207 F. 2d 462; *Superior Oil Co.* v. *Mississippi*, 280 U.S. 390; *Jones* v. *Helvering*, 71 F. 2d 214.

We view the present record as a demonstration of the attempted *creation* of a tax deduction. Although we have found as a fact that the bonds were purchased and at a premium price, the fallacy we find in petitioner's attempted deduction of the premium portion of the purchase price of the bonds is that neither section 125 nor any other section of the 1939 Code permits such a deduction.

The bonds with which we are here concerned do not produce tax-exempt interest. There is no issue before us with respect to the deductibility of the interest paid on petitioner's note to the First National Bank of Scranton.

Section 125 was enacted to provide for the deduction of bond premium ratably with the receipt of income represented by interest on bonds which is, in its entirety, income, but which actually includes a ratable return of the bond premium otherwise not deductible until the maturity date or the sale or exchange of the bond. H. Rept. No. 2333, 77th Cong., 2d Sess. (1942).

In determining whether, in purchasing bonds at a premium price for the purpose of disposing of them by gift, petitioner is entitled to a deduction for amortization of bond premium, we must view each step in the transactions here involved in the light of petitioner's ultimate purpose with respect to that purchase and its overall economic effect. *George G. Lynch*, 31 T.C. 990, and *Leslie Julian*, 31 T.C. 998, both affirmed 273 F. 2d 867 (C.A. 2).

Petitioner bargained for bonds which it desired to donate to the Foundation. It received those bonds and made the intended gift. To us, the transaction is not different from one in which the petitioner donated cash to the Foundation in an amount equivalent to its equity in the bonds at the date of gift. No real economic loss based on the premium paid can occur under such circumstances. Petitioner is no richer or poorer because of its purchase and gift of the bonds, it having determined in the first instance to make such a gift. *Shoenberg* v. *Commissioner*, 77 F. 2d 446 (C.A. 8), affirming 30 B.T.A. 659, certiorari denied 296 U.S. 586; *Gregory* v. *Helvering*, 293 U.S. 465. It is virtually conceded here and we have found as a fact that petitioner's only motive with respect to *disposition* of the Appalachian bonds here involved from beginning to end of the transactions set forth in our Findings of Fact was to make a gift of those bonds or of its equity therein, which we have found as a fact it has done. Gift transactions do not give rise to deductions for bond premiums under section 125 or 23(v) for they are voluntary dispositions of property. Its only motive in *purchasing* the bonds in lieu of making a like gift of cash was to *create* a tax deduction under section 125 by virtue of the premium paid. Its purpose being to make a gift to the Foundation, that purpose could as well have been accomplished by a cash gift. No other business purpose is disclosed by this record and one is surely needed to provide the necessary character to the bond premium in order that it be held deductible under sections 125 and 23(v). Congress cannot be held to have intended to tax all income from whatever source derived and at the same time to have provided by its literal wording in section 125 for the unlimited *creation* by the taxpayer of a tax deduction. We hold that it had no such intention. *Gregory* v. *Helvering*, *George G. Lynch*, and *Leslie Julian*, all *supra*.

We sustain the respondent on this issue.

Respondent takes the position that, because, as he contends, the bond transactions here at issue were a sham and unreal, petitioner is not to be considered to have made a gift to charity of its equity in the bonds. We do not think his position is tenable.

We have found that petitioner actually purchased the bonds and that the bonds were real. We have also found that petitioner actu-

ally transferred the bonds to the Foundation which respondent has determined to be a charitable institution. Petitioner purchased the bonds with borrowed money and cash, the bonds remaining in the hands of the lender as collateral security for the loan. The fact that neither petitioner nor the Foundation at any time physically held the bonds is of no moment here. Petitioner held title to them and effectively transferred it to the Foundation. As between petitioner and the Foundation, the latter assumed and paid the note obligation. That the bonds had a fair market value on the date of transfer to the Foundation is not seriously disputed. In fact it may reasonably be concluded from this record and we have found that their fair market value on the date of the gift was $119,000. The record amply shows a donative intent on the part of petitioner and that it retained no interest in the bonds whatsoever after their transfer to the Foundation. These are the elements of a charitable gift.

We hold the gift to be deductible subject to statutory limitation.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

DRENNEN, *J.*, dissenting: I respectfully dissent. The majority find as a fact that petitioner's ultimate purpose and intention was to make a gift of its equity in the bonds to a charitable institution. It chose to accomplish this purpose in a manner which would give it the deduction for bond premium amortization allowed by law. It did not *create* the deduction—that was created by Congress. If Congress wants to take away or limit the deduction that is for Congress to do—not this Court.

I realize that the bond premium amortization deduction granted under section 125, I.R.C. 1939, has been taken advantage of in a number of schemes to gain a tax advantage that may not have been anticipated by Congress. Some of these schemes have involved fictitious transactions and we have, I think, correctly disallowed deductions claimed to result therefrom.[1] But where the transactions are real and the law clearly allows the deduction, I do not believe we should hold that Congress did not mean what it said in the law, particularly where, as with this deduction, Congress has had the matter called to its attention and has amended the law three times, without retroactive effect, since it was first enacted in 1942.[2]

MULRONEY, *J.*, agrees with this dissent.

[1] *Eli D. Goodstein,* 30 T.C. 1178, affd. 267 F. 2d 127 (C.A. 1); *Sonnabend v. Commissioner,* 267 F. 2d 319 (C.A. 1), affirming per curiam T.C. Memo. 1958–178.

[2] Sec. 217(a), Revenue Act of 1950; sec. 171, I.R.C. 1954; sec. 13, Technical Amendments Act of 1958.