FABREEKA PRODUCTS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 72087. Filed May 24, 1960.

*Kenneth W. Bergen, Esq., Josiah A. Spaulding, Esq.,* and *M. Gordon Ehrlich, Esq.,* for the petitioner.

*Raymond T. Mahon, Esq.,* and *John M. Doukas, Esq.,* for the respondent.

294

OPINION.

RAUM, *Judge:* 1. The so-called amortization issue must be decided against petitioner on the authority of *Maysteel Products, Inc.*, 33 T.C. 1021. Indeed, the record in the present case peculiarly calls for the denial of the claimed deduction, since the substance of the transaction was merely the declaration of a dividend to petitioner's stockholders, a transaction that cannot produce a deduction to the corporation. The elaborate and devious steps taken to achieve that result should not and do not alter the tax consequences that would flow therefrom if the transaction were carried out directly. This has been recognized in many cases and in a wide variety of situations over a long period of years. It is a matter of familiar learning, and we do not feel impelled to review the numerous decisions reaffirming the rule. The point was stated succinctly and clearly in *Minnesota Tea Co.* v. *Helvering*, 302 U.S. 600, where the Court said (p. 613): "A given result at the end of a straight path is not made a different result by following a devious path." The "given result" here was the declaration and payment of a yearend cash dividend to petitioner's stockholders that is nondeductible, and it cannot be converted into a deductible item by "following a devious path."

2. The remaining items in controversy stand on a different footing. In the course of following the "devious path," petitioner actually borrowed money, paid interest thereon, paid stamp taxes, and paid a fee to its tax counselor. We hold that these items are deductible. Our decision in this respect is not inconsistent with our disposition of the first issue.

The substance versus form rule requires us to treat the totality of the steps as the declaration and payment of a nondeductible dividend; but in the course of unsuccessfully attempting to convert it into deductible amortization petitioner did actually incur expenses which, standing alone, must be allowed as deductions. Thus, it seems clear that the taxpayer in *Gregory* v. *Helvering*, 293 U.S. 465, would not have been denied a deduction for legal fees merely because the course of action advised by the lawyer backfired. True, the transaction in the *Gregory* case failed to qualify as a "reorganization" because of lack of business purpose, but this does not mean that the component steps are to be completely ignored for all purposes. Real·corporations were involved in the *Gregory* case, and surely, to the extent that securities were transferred from one to another, applicable stamp taxes were required to be paid and deductions therefor would plainly be allowable. Petitioner in the instant case actually borrowed money and is entitled to deduct the interest paid thereon. Cf. *L. Lee Stanton*, 34 T.C. 1. Similarly, the $85 paid as stamp taxes is deductible. And the $1,000 fee actually paid for Glunts' services is likewise deductible even though such services failed to produce the desired results. We know of no rule of law applicable here that is comparable to the "public policy" rule in the case of expenses relating to illegal acts, cf. *Tank Truck Rentals* v. *Commissioner*, 356 U.S. 30; and certain expenses, even in the case of illegal businesses, may be deductible, cf. *Commissioner* v. *Sullivan*, 356 U.S. 27.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

OPPER and DRENNEN, *JJ.*, concur in the result only.

------

MURDOCK, *J.*, concurring: Numerous cases have come before this Court in which taxpayers have entered into transactions intended to give them a substantial deduction for amortization of bond premiums. They have dealt in bonds containing a provision for call at a stated amount on notice of 30 days, although it is well known in the market that there is no likelihood of the debtor calling them. Such dealings in these bonds have apparently created a market price for the bonds far in excess of what it would be except for this 30-day call provision and its attraction to taxpayers looking for a tax benefit. The higher the price, the greater the premium subject to amortization. Taxpayers buy the bonds at the inflated price, hold them 30 days, deduct the difference between cost and the 30-day call price, and then find some way to dispose of them which also may be beneficial taxwise. The artificially sustained market price

is helpful in the beneficial disposition. The taxpayers do not sustain a loss during the 30 days equal to the difference between cost and the 30-day call price. They may sustain no loss whatsoever. They take no real risk of any such loss from a possible call because, as has appeared, the issuer of the bonds, expanding and borrowing additional amounts, has no intention of calling these bonds on 30 days' notice or indeed of calling them at all in the near future. Cf. *Estate of A. Gourielli*, 33 T.C. 357; *Jacob A. Goldfarb*, 33 T.C. 568; *Maysteel Products, Inc.*, 33 T.C. 1021. One desiring a real income-producing investment would not be likely to pay the premium price for bonds like these. I cannot believe that Congress had such a situation in mind and intended taxpayers to take a deduction under any such circumstances.

BRUCE and MULRONEY, *JJ.*, agree with this concurring opinion.

———

PIERCE, *J.*, concurring in part and dissenting in part: I would have disallowed *all* the claimed deductions here involved, on the basis of the reasons and the judicial authorities set forth in my dissenting opinion in *L. Lee Stanton*, 34 T.C. 1. While I agree with the *result* reached by the Court on the first issue, I believe that such result should have been attained through application of principles which are more fundamental and cogent than those noted in the Court's opinion. As to the second issue, I feel impelled to disagree with the Court's holding.

The basic question here involved is, in my view, substantially the same as that involved in the *Stanton* case and in a multiplicity of other cases which have recently come before this and other courts (several of which cases are cited in my dissenting opinion in the *Stanton* case)—notwithstanding that there are variations of detail from case to case, as might be expected. Such basic question is: Whether a taxpayer may successfully contrive to reduce his potential income tax liabilities, at such times and by such amounts as he may elect, through employment of preconceived step-by-step transactions which are not entered into for any business purpose or personal purpose whatsoever, other than to avoid income taxes; which have no "economic reality"; which distort a true reflection of taxable income; and which, in substance, amount to nothing more than a "purchase" of tax deductions.

I cannot believe that Congress ever intended that the Internal Revenue Code which is designed to provide the Government with needed revenues, should be so construed as to bear within itself the means for frustrating such essential purpose—and thereby encourage what the above-mentioned cases have revealed to be a wide-

spread practice of acquiring tax deductions at a relatively nominal price, through schemes and transactions which have no "economic reality." I believe that (adopting the words of the Supreme Court in *Gregory* v. *Helvering*, 293 U.S. 465) "[t]o hold otherwise would be to exalt artifice above reality and to deprive the statutory provision in question of all serious purpose." Also to hold otherwise might, in my view, seriously impair public confidence in our Federal income tax system, by giving implied approval to practices whereby particular taxpayers may practically "write their own tickets" as to income tax liabilities, through the adoption of artifice. The fundamental problem in all cases like the present is, not whether formalisms and labels have been meticulously observed, but rather, whether allowance of the claimed deductions, in circumstances such as are disclosed in the instant case, would conform with the intent, the spirit, and the purpose of our income tax statutes.

2. As regards the second issue in the instant case, the Court allowed deduction for the miscellaneous expenses incident to carrying out the plan which Glunts proposed—apparently on the ground that such miscellaneous expenses actually were incurred and paid. But the deductibility of expenditures depends on more than the mere incurrence or payment thereof. What actually occurred here was this: Glunts told petitioner's president that he had a plan, whereby the corporation could obtain a deduction from income taxes which would be approximately equal to the amount of its intended yearend dividend. The substance of this plan was that such yearend dividend would be declared and paid in the form of an "interest in property" (in the nature of an equity interest in certain bonds) to be acquired for such purpose, rather than in the form of cash. Petitioner's directors adopted such plan; and thereupon Glunts proceeded to handle all details pertaining to the acquisition and the distribution of such "property interest." The miscellaneous expenses involved in the second issue herein, are in reality separate items of the overall package-cost of acquiring such "property interest," and of taking all the indispensable steps in following the devious path which Glunts prescribed.

But a corporation's "cost" for property which it distributes in kind to its stockholders is not deductible. The situation is similar to that where a corporation purchases a parcel of real estate, and in connection therewith pays brokers' commissions, recording fees, transfer taxes, and other miscellaneous expenses, which enter into its cost basis for such property; and where it then distributes such property in kind to its stockholders as a dividend. Certainly none of the items making up the overall cost of the property so distributed, would be deductible by the corporation at the time such dividend-in-kind is distributed.

Also, there are other reasons why certain items of such miscellaneous expenses are not deductible. The largest item is the $1,000 fee paid to the Glunts company for "services rendered." It would seem that the only section of the Code under which this item could possibly be deductible is section 162, relating to "ordinary and necessary expenses" incurred in "carrying on" the petitioner's business. But the services of the Glunts company had no relation whatsoever to the operation of petitioner's business of manufacturing rubber goods, or to the production of the income, or to any other phase of "carrying on" that business. Also, part of the item for "interest" is actually a broker's fee of one-fourth per cent, for services in placing the so-called "Non-Purpose 'Stock' Collateral Time Loan"; and it is not an ordinary and necessary expense of carrying on petitioner's business. And another item is the $85 expended for Federal documentary stamp taxes on the "resale" of the bonds. But such resale was made by James D. Glunts as an agent for the distributee-stockholders, after the "property interests" in the bonds had been distributed as a dividend; and thus would appear to be an expenditure which was not even incurred for the benefit of the petitioner corporation.

The Court's reference to the *Gregory* case in connection with the second issue, seems inappropriate. The *Gregory* case did not involve any question relating to the deductibility of expenses; and what the Court has here attempted to do, is to hoist itself by its own bootstraps—first by conjecturing what the result would have been in the *Gregory* case if a deduction issue had there been involved, and then employing such conjectured result in arriving at a similar result in the instant case. Also the Court's reference to *Tank Truck Rentals* v. *Commissioner*, 356 U.S. 30, seems inappropriate. That case did not involve a "no economic reality" tax avoidance scheme; and the facts and problems there presented are far afield from those presented in the instant case.