CROSBY VALVE & GAGE COMPANY (FORMERLY CROSBY STEAM GAGE & VALVE COMPANY), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 77979.   Filed August 22, 1966.

*Jack H. Calechman,* for the petitioner.
*Albert R. Doyle,* for the respondent.

BRUCE, *Judge:* Respondent determined deficiencies in income tax for fiscal years ended October 31, 1954, 1955, and 1956 in the respective amounts of $8,465.88, $15,627.17, and $1,379.39.

The deficiencies in question resulted primarily from respondent's disallowance of deductions claimed by petitioner for amortization of bond premiums, for interest expense and for assignments of its equity in said bonds to certain tax-exempt charitable organizations. In a stipulation filed by the parties at the trial, respondent has conceded: (1) That the deductions for bond amortization of bond premiums in the taxable years ended in 1954 and 1955 are allowable as claimed; (2) that the deductions for interest expense in the taxable year ended in 1955 are allowable as claimed; and (3) that petitioner is entitled to a deduction for a charitable contribution in the amount of $4,551.25, made in the taxable year ended in 1954 to the Stone Charitable Foundation (a trust).

The only issue remaining for decision is whether the assignments of petitioner's equity in certain bonds to the Stone Charitable Foundation, Inc., which owned all of the stock of petitioner, were charitable contributions so as to entitle petitioner to deductions as provided by section 170 of the Internal Revenue Code of 1954.

Stipulations concerning other issues will be given effect under Rule 50.

Some facts are stipulated.

#### FINDINGS OF FACT

The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioner is a Massachusetts corporation with its principal place of business in Wrentham, Mass. It filed Federal income tax returns for fiscal years ended October 31 in 1954, 1955, and 1956 with the district director of internal revenue at Boston, Mass.

All the issued and outstanding stock of the petitioner is owned by the Stone Charitable Foundation, Inc., hereinafter referred to as the foundation.

During the taxable years in issue the foundation was an organization of the type specified in section 501(c)(3) and qualified for exemption under section 501(a) of the Internal Revenue Code of 1954. The foundation was established in the late 1940's. Abraham Stone, a brother of Harry K. Stone and Dewey Stone, was secretary and a trustee of the foundation. Harry K. and Dewey Stone were also "connected with" the foundation. Abraham, his nephew Stephen Stone, and Alfred B. Rudnick were the original incorporators. Stephen held the voting proxies for all of the stock of petitioner during the years involved. Most of the charitable contributions to the foundation were received from members of the Stone family.

In 1954 the directors of the petitioner were William P. Husband, Jr.; Harry K. Stone; Dewey Stone, brother of Harry K. Stone; and Hugh David Stone, son of Harry K. Stone. Husband was president and treasurer and Harry K. Stone was chairman of the board of trustees. Hugh David Stone was "clerk" of the corporation in 1954, 1955, and 1956, and later became its president and treasurer.

Prior to June 22, 1954, the directors of petitioner considered a proposal that the petitioner purchase certain bonds to be financed in part by bank loans, hold the bonds for 30 days or more, and then contribute them to charity subject to the bank loan, with the intention that petitioner claim a deduction for amortization of bond premiums and also a deduction for a contribution to charity, from the same transaction. The directors approved the plan.

At a meeting of the board of directors of the petitioner, held on February 16, 1954, the following resolutions were adopted:

VOTED: That William P. Husband, Jr., the President and Treasurer be and hereby is authorized for and on behalf of this corporation to make charitable contributions from time to time during the fiscal year ending October 31, 1954 to the Trustees of The Stone Charitable Foundation, the aggregate amount of said charitable contributions to be determined by said William P. Husband, Jr. in his judgment and discretion.

VOTED: That a dividend in the sum of one hundred thousand ($100,000.00) dollars in cash be and hereby is declared to be paid to stockholders of record as of December 31, 1953 and payable at the discretion of the Treasurer on or before April 15, 1954.

At a meeting of the board of directors of the petitioner, held on March 22, 1955, the following vote was adopted:

VOTED: That William P. Husband, Jr., the President and Treasurer be and hereby is authorized for and on behalf of this corporation to make charitable contributions from time to time during the fiscal year ending October 31, 1955 to the Trustees of The Stone Charitable Foundation, or to any other charitable organizations, the aggregate amount of said charitable contributions to be determined by said William P. Husband, Jr., in his judgment and discretion.

On June 22, 1954, petitioner purchased $60,000 Piedmont & Northern Railway 3¾-percent bonds of 1966. The purchase was financed

in part by Lake View Trust & Savings Bank of Chicago, Ill. On July 26, 1954, petitioner assigned the bonds subject to the bank's lien, to the Stone Charitable Foundation (a trust), hereinafter referred to as the trust. As of July 26, 1954, the fair market value of petitioner's equity in the bonds was $4,551.25.

On June 22, 1954, petitioner purchased $85,100 Hartford Electric Light Co. 3¼-percent bonds of 1971. The purchase was financed in part by Lake View Trust & Savings Bank of Chicago, Ill. On September 1, 1954, petitioner assigned the bonds, subject to the bank's lien, to the foundation. As of September 1, 1954, the fair market value of petitioner's equity in the bonds was $5,771.51.

On November 10, 1954, petitioner purchased $95,000 Alabama Power Co. 3⅜-percent bonds of 1978. The purchase was financed in part by Morgan Guaranty Trust Co. of New York, N.Y. On December 14, 1954, petitioner assigned the bonds, subject to the bank's lien, to the foundation. As of December 14, 1954, the fair market value of petitioner's equity in the bonds was $10,117.50.

On November 10, 1954, petitioner purchased $125,000 Appalachian Electric Power Co. 3⅛-percent bonds of 1977. The purchase was financed in part by Morgan Guaranty Trust Co. of New York, N.Y. On December 27, 1954, petitioner assigned the bonds, subject to the bank's lien, to the foundation. As of December 27, 1954, the fair market value of petitioner's equity in the bonds was $10,292.98.

The transactions, described above, had substance. The designated bonds were in existence and were physically held by the lending institutions as collateral for their loans.

The charitable contribution deductions claimed on petitioner's income tax returns for the fiscal years ended October 31, 1954, October 31, 1955, and October 31, 1956 (contribution carryover), are based solely on the contributions of petitioner's equity in the bonds described above, to the trust and the foundation (with the exception of miscellaneous deductions totaling $50 and set forth separately on such returns).

During the period from September 18, 1953, to July 31, 1958, the following dividends were paid by petitioner:

| Date | Amount |
| --- | --- |
| Sept. 18, 1953 | $100,000 |
| Mar. 1, 1954 | 100,000 |
| Oct. 19, 1955 | 50,000 |
| Dec. 9, 1955 | 75,000 |
| Sept. 13, 1956 | 75,000 |
| Oct. 4, 1957 | 125,000 |
| July 31, 1958 | 35,000 |

The information returns filed by the foundation showed the following contributions from the petitioner:

### FISCAL YEAR ENDED NOV. 30, 1954

| Date | Amount |
| --- | --- |
| Jan. 5 | $1,000.00 |
| Nov. 17 | 5,771.51 |
| Nov. 19 | 210.10 |

### FISCAL YEAR ENDED NOV. 30, 1955

| Date | Amount |
| --- | --- |
| Dec. 31 | $10,117.50 |
| Dec. 31 | 10,292.98 |

On its returns for the fiscal years ended in 1954 and 1955 petitioner claimed amortization (difference between cost basis and call price) on each group of bonds purchased and also claimed a charitable deduction for the excess of the fair value over the adjusted basis of such bonds at the time of the assignments to the trust or to the foundation, subject to the 5-percent limitation on such contributions in each year.

The transfers by petitioner to the foundation in its fiscal years ended in 1954 and 1955 of its equity in the bonds above described were not charitable contributions deductible pursuant to section 170, I.R.C. 1954. Petitioner is not entitled to a contribution carryover to its fiscal year ended in 1956 by reason of the transfers above described.

#### OPINION

In his notice of deficiency issued September 19, 1958, respondent disallowed certain deductions claimed by petitioner in the taxable years involved for amortization of bond premiums, interest on indebtedness incurred in connection with the purchase of the bonds, and charitable contributions of its equity in such bonds. In disallowing these claimed deductions it was apparently respondent's position that the entire transaction was a sham, having no business purpose other than the creation of tax deductions which were not within the intendment of sections 171, 163, and 170, respectively, I.R.C. 1954.

Subsequently, this Court had occasion to consider a number of cases involving similar transactions.

In *Maysteel Products, Inc.*, 33 T.C. 1021 (1960), the taxpayer made a similar purchase of bonds, financed in part by a bank loan, and made a gift of the bonds, subject to the indebtedness, to Maysteel Foundation, a tax-exempt corporation organized by the stockholders of the taxpayer. Respondent there, as here, disallowed the claimed deductions both for amortization of bond premiums and for the contribution. This Court denied the deduction for amortization but allowed the deduction for the gift to charity. No issue was presented respecting the deductibility of interest paid on the bank loan. Respondent acquiesced in our decision allowing the deduction for the gift to charity.

1960–2 C.B. 6. Prior to its reversal on appeal, this Court followed its decision in the *Maysteel* case in several other cases involving similar transactions. See, for example, *Fabreeka Products Co.*, 34 T.C. 290 (1960); *Jack L. Sherman*, 34 T.C. 303 (1960); and *Sadie S. Friedman*, 34 T.C. 456 (1960). In *Maysteel Products, Inc.* v. *Commissioner*, 287 F. 2d 429 (1961), the United States Court of Appeals for the Seventh Circuit reversed the decision of this Court in part and held that the deduction for amortization of bond premium was allowable. See also *Fabreeka Products Co.* v. *Commissioner*, 294 F. 2d 876 (C.A. 1, 1961), vacating and remanding this Court's decisions in the *Fabreeka*, *Sherman*, and *Friedman* cases; *Evans* v. *Dudley*, 295 F. 2d 713 (C.A. 3, 1961), certiorari denied 370 U.S. 909 (1962); and *Humphreys* v. *Commissioner*, 301 F. 2d 33 (C.A. 6, 1962), reversing a Memorandum Opinion of this Court.

In Rev. Rul. 62–127, 1962–2 C.B. 84, the Internal Revenue Service announced it would thereafter follow the decision in *Humphreys* v. *Commissioner, supra*, with respect to the issue whether taxpayers are entitled to an amortizable bond premium deduction. Consistent with that ruling and his previous acquiescence in the decision of this Court in the *Maysteel* case allowing a deduction for the charitable contribution respondent has conceded that "the transactions here in question had substance and were not shams" and has stipulated: (1) That the deductions for amortization of bond premiums in the taxable years ended in 1954 and 1955 are allowable as claimed; (2) that the deductions for interest expense in the taxable year ended in 1955 are allowable as claimed; and (3) that petitioner is entitled to a deduction for a charitable contribution in the amount of $4,551.25, made in the taxable year ended in 1954 to the Stone Charitable Foundation (a trust).

Respondent contends, however, that the assignments of petitioner's equity in certain of the bonds to the Stone Charitable Foundation, Inc., were not charitable contributions such as would entitle petitioner to deductions therefor under section 170 of the Internal Revenue Code of 1954,[1] but were in effect dividends. No issue as to the computation

---

[1] SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS.

    (a) ALLOWANCE OF DEDUCTION.—

        (1) GENERAL RULE.—There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate.

    *       *       *       *       *       *       *

    (b) LIMITATIONS.—

    *       *       *       *       *       *       *

        (2) CORPORATIONS.—In the case of a corporation, the total deductions under subsection (a) for any taxable year shall not exceed 5 percent of the taxpayer's taxable income computed without regard to—

    *       *       *       *       *       *       *

Any contribution made by a corporation in a taxable year (hereinafter in this sentence referred to as the "contribution year") in excess of the amount deductible for such

of the claimed charitable deductions or the contribution carryover, if allowable, is presented. The basis for respondent's contention is that foundation (unlike trust, which is a separate and distinct entity and owns no stock in petitioner) owns all of the stock of petitioner and completely controls its operations, and that such control precludes the assignments in question from qualifying as gifts. We agree with respondent's contention.

Section 170(c) defines the term "charitable contribution" as "a contribution or gift." In *Harold DeJong*, 36 T.C. 896, 899, affd. 309 F. 2d 373 (C.A. 9, 1962), this Court stated "As used in this section the term 'charitable contribution' is synonymous with the word 'gift.'" See also *Channing* v. *United States*, 4 F. Supp. 33, 34 (D. Mass.), affirmed per curiam 67 F. 2d 986 (C.A. 1), certiorari denied 291 U.S. 686.

In *Commissioner* v. *Duberstein*, 363 U.S. 278, 284, 285-286, the Supreme Court stated:

The meaning of the term "gift" as applied to particular transfers has always been a matter of contention.[5] Specific and illuminating legislative history on the point does not appear to exist. Analogies and inferences drawn from other revenue provisions, such as the estate and gift taxes, are dubious. See *Lockard* v. *Commissioner*, 166 F. 2d 409. The meaning of the statutory term has been shaped largely by the decisional law. * * *

* * * * * * *

The course of decision here makes it plain that the statute does not use the term "gift" in the common-law sense, but in a more colloquial sense. This Court has indicated that a voluntarily executed transfer of his property by one to another, without any consideration or compensation therefor, though a common-law gift, is not necessarily a "gift" within the meaning of the statute. For the Court has shown that the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift. *Old Colony Trust Co.* v. *Commissioner*, 279 U.S. 716, 730. And, importantly, if the payment proceeds primarily from "the constraining force of any moral or legal duty," or from "the incentive of anticipated benefit" of an economic nature, *Bogardus* v. *Commissioner*, 302 U.S. 34, 41, it is not a gift. * * * A gift in the statutory sense, on the other hand, proceeds from a "detached and disinterested generosity," *Commissioner* v. *LoBue*, 351 U.S. 243, 246; "out of affection, respect, admiration, charity or like impulses." *Robertson* v. *United States*, 343 U.S. 711, 714. And in this regard, the most critical consideration, as the Court was agreed in the leading case here, is the transferor's "intention." *Bogardus* v. *Commissioner*, 302 U.S. 34,

year under the preceding sentence shall be deductible for each of the 5 succeeding taxable years in order of time, * * *

* * * * * * *

(c) CHARITABLE CONTRIBUTION DEFINED.—For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—

* * * * * * *

(2) A corporation, trust, or community chest, fund, or foundation—

* * * * * * *

(B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals;

(C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and

43. "What controls is the intention with which payment, however voluntary, has been made." *Id.*, at 45 (dissenting opinion).[8]

\*        \*        \*        \*        \*        \*        \*

We take it that the proper criterion, established by decision here, is one that inquires what the basic reason for his conduct was in fact—the dominant reason that explains his action in making the transfer. \* \* \*
    [Footnotes omitted.]

The Supreme Court further pointed out that "The conclusion whether a transfer amounts to a 'gift' is one that must be reached on consideration of all the factors."

In affirming the decision of this Court in the *DeJong* case, the Ninth Circuit Court of Appeals quoted at length from the Supreme Court's opinion in the *Duberstein* case and concluded (309 F. 2d 373, 379) :

The value of a gift may be excluded from gross income only if the gift proceeds from a "detached and disinterested generosity" or "out of affection, admiration, charity or like impulses" and must be included if the claimed gift proceeds primarily from "the constraining force of any moral or legal duty" or from "the incentive of anticipated benefit of an economic nature." We must conclude that such criteria are clearly applicable to a charitable deduction under § 170.

Considering all of the facts and circumstances presented herein, it is our opinion that the transfers of petitioner's equity in the bonds in question to the foundation did not proceed from a "detached and disinterested generosity," but were the result primarily of the control which the foundation had over petitioner and the "legal duty" which petitioner had to carry out the will of its sole stockholder.

The foundation owns all of the outstanding stock of petitioner and as Abraham Stone, its secretary and one of its trustees, testified, has complete control of all its activities and transactions. Three members of the Stone family, at least two of whom were "connected with" the foundation, were on the board of directors of the petitioner which considered the plans for the entire transaction, including the proposed purchase of the bonds to be financed by bank loans, the period for which they were to be held, and the subsequent transfer of the equity in the bonds to foundation. Abraham admitted the transfer of the equity to the foundation was anticipated by it. Under all the circumstances it would be extremely unrealistic to conclude that the transfers in question proceeded primarily from the "detached and disinterested generosity" of the petitioner.

We hold that the assignments of petitioner's equity in the bonds in question to Stone Charitable Foundation, Inc., were not contributions or gifts within the meaning of section 170 of the Internal Revenue Code of 1954, and that petitioner is not entitled to a charitable deduction therefor.

Our conclusion is consistent with the legislative purpose and provisions of sections 511 to 515, inclusive, I.R.C. 1954, relating to the

taxation of the business income of certain exempt organizations. Section 511 imposes a tax on the "unrelated business taxable income" of certain exempt educational and charitable organizations. Section 512 defines "unrelated business taxable income" as the gross income derived by any organization from any unrelated trade or business regularly carried on by it, less the deductions, exemptions, and exclusions referred to therein, including the charitable deduction allowed by section 170. As indicated by the legislative history and applicable regulations, however, in computing the "unrelated business taxable income," only those contributions or gifts which are made to *another* exempt organization are to be deducted from the gross income.

Referring to the so-called charitable contribution deductions allowed by sections 23(o) and 23(q) of the 1939 Code (from which sec. 170, 1954 Code, is derived), H. Rept. No. 2319 [2] and S. Rept. No. 2375 [3] contain the following identical language:

> The contribution, whether made by a trust or other exempt organization, must be paid to another organization to be allowable. For example, a section 101(6) incorporated educational institution operating an unrelated business would be allowed a deduction up to 5 percent of its unrelated business net income for amounts of income from any source paid over to the Red Cross but would not be allowed any deduction for amounts of business income which are used to defray its own expenses in administering its own educational program.

Section 1.512(b)–1(g)(3), Income Tax Regs., provides:

> (3) The contribution, whether made by a trust or other exempt organization, must be paid to another organization to be allowable. For example, a university described in section 501(c)(3) which is exempt from tax and which operates an unrelated business, shall be allowed a deduction, not in excess of 5 percent of its unrelated business taxable income, for gifts or contributions to another university described in section 501(c)(3) for educational work but shall not be allowed any deduction for amounts expended in administering its own educational program.

Thus, no charitable deduction is allowable to an exempt educational or charitable organization with respect to business income expended in administering its own program. That would be equivalent to making gifts to itself. We see no reason for a difference in tax treatment merely because the income was earned by a wholly owned subsidiary rather than directly by the tax-exempt organization.[4] In both instances the exempt organization has complete control over the distribution or use of the earnings and profits.

Where, as here, the income-producing business is carried on by a separate corporation for the benefit of the charitable corporation which owns all of its stocks, controls all of its activities, and is entitled to all of its distributable earnings and profits, transfers of earnings and

---

[2] H. Rept. No. 2319, 81st Cong., 2d Sess., p. 111 (1950), 1950–2 C.B. 380, 459–460.
[3] S. Rept. No. 2375, 81st Cong., 2d Sess., p. 109 (1950), 1950–2 C.B. 483, 561.
[4] See remarks contained in the House and Senate Reports: H. Rept. No. 2319 *supra* at 37, 1950–2 C.B. 409; S. Rept. No. 2375 *supra* at 29, 1950–2 C.B. 505.

profits, directly or indirectly, such as are involved herein, should not be treated as deductible contributions or gifts.

See also *Lucille M. Evans*, 39 T.C. 570 (1962), affd. 330 F. 2d 518 (C.A. 6, 1964) ; *Carson* v. *United States*, 317 F. 2d 370 (Ct. Cl. 1963) ; *Lengsfield* v. *Commissioner*, 241 F. 2d 508 (C.A. 5, 1957), affirming a Memorandum Opinion of this Court, wherein this and other Courts have held that corporate payments to certain widows of deceased officers who have succeeded to large or controlling interests in the corporation, though designated as gifts, did not proceed from detached and disinterested generosity and did not qualify as gifts.

The transfers to the foundation were made primarily because it owned the stock of petitioner. The transfers were not gifts and are not deductible. The sole issue is decided for the respondent.

Reviewed by the Court.

*Decision will be entered under Rule 50*

TANNENWALD, *J.*, concurring: I think the majority decision is correct solely because of the statutory mandate. Considerations of "detached and disinterested generosity," "legal duty," and "control" are, in my opinion, wholly immaterial. Cf. *Jordon Perlmutter*, 45 T.C. 311, 317 (1965). Beyond this, the majority analysis of these phrases may lead to future misinterpretation and misapplication of its holding in a wide area of situations involving contributions to private charitable foundations which have for many years been considered proper deductions.

Section 512(b) (10) of the Internal Revenue Code of 1954 specifically states:

In the case of any organization described in section 511(a), the deduction allowed by section 170 (relating to charitable etc. contributions and gifts) shall be allowed (whether or not directly connected with the carrying on of the trade or business), but shall not exceed 5 percent of the unrelated business taxable income computed without the benefit of this paragraph.

Congress, in enacting the predecessor of this provision, which contained substantially identical language (sec. 422, I.R.C. 1939), made clear its intention:

*The contribution, whether made by a trust or other exempt organization, must be paid to another organization to be allowable.* For example, a section 101(6) incorporated educational institution operating an unrelated business would be allowed a deduction up to 5 percent of its unrelated business net income for amounts of income from any source paid over to the Red Cross but would not be allowed any deduction for amounts of business income which are used to defray its own expenses in administering its own educational program. [Emphasis added.] [H. Rept. No. 2319, 81st Cong., 2d Sess., p. 111 (1950) ; S. Rept. No. 2375, 81st Cong., 2d Sess., p. 109 (1950).]

In addition, section 681 of the Internal Revenue Code of 1954 specifically denies to a charitable trust *any* deduction "with respect

to income of the taxable year which is allocable to its unrelated business income for that year." See also H. Rept. No. 2319, *supra* at 127; S. Rept. No. 2375, *supra* at 119.

Finally, the Congress in taxing unrelated business income sought generally to eliminate the distinction between situations where such income was earned directly by the charitable organization or by a subsidiary of that organization. Both the House and Senate committee reports state:

> Some of the witnesses who appeared before your committee took the position that this unrelated business income should be taxed only if received by a subsidiary organization. However, *it is difficult to see why a difference in tax treatment should be allowed merely because in one case the income is earned directly by an educational or charitable organization, while in the other it is earned by a subsidiary of such an organization.* In both cases the income is derived from the same type of activities and disposed of in the same manner. Moreover, in most cases the business functions now carried on by subsidiaries could be transferred to the parent if the tax were applied only to the income of the subsidiaries. [Emphasis added. H. Rept. No. 2319, *supra* at 37; S. Rept. No. 2375, *supra* at 39.]

Against this background, it seems to me that Congress has seen fit to deny the right to deduct from unrelated business income the expenses of administering a charitable program, whether such income is earned directly by the charitable organization or indirectly by a subsidiary which is an integral part of the overall complex.

I would deny the deduction herein on this ground alone.

FAY and DAWSON, *JJ.*, agree with this concurring opinion.

---

DRENNEN, *J.*, dissenting: I agree with Judge Tannenwald in his concurring opinion that considerations of "detached and disinterested generosity," "legal duty," and "control" are immaterial, and that the majority analysis of these phrases may lead to future misinterpretation and misapplication of its holding in other situations. However, I cannot agree with Judge Tannenwald that the decision of the majority is correct because of a statutory mandate, nor can I agree with the majority that the legislative history of sections 511 to 515, inclusive, justifies the result reached by the majority.

I find nothing in the statute which I can interpret as a mandate to disallow the deduction claimed here. In fact, the statutory language, per se, appears to be just to the contrary.

Section 511 imposes a tax on the unrelated business taxable income of certain charitable organizations; and section 512 defines unrelated business taxable income as the gross income derived by any organization from any unrelated trade or business regularly carried on by it, less the deductions allowed by this chapter which are directly connected with the carrying on of such trade or business, both computed with the exceptions, additions, and limitations provided in subsection

(b). Subsection (b) (10) specifically provides that in the case of any organization described in section 511 (a) the deduction allowed by section 170 (relating to charitable contributions) shall be allowed (whether or not directly connected with the carrying on of the trade or business), but not to exceed 5 percent of the unrelated business taxable income. This would appear to be a deliberate effort to allow a deduction against the unrelated taxable business income of a charitable organization for contributions to charities to the same extent that the deduction is allowed against the taxable business income of any other corporation. There is nothing in the language of the statute itself which specifically prohibits the deduction for a contribution even to the charitable organization itself, except the fact that it is difficult to contribute to one's self. But the taxpayer involved here is not the charitable organization itself and as long as the contribution is used for charitable purposes, I see no reason that it should be denied to this taxpayer simply because the charitable organization using the fund for charitable purposes happens to be the owner of the stock of the taxpayer. The 5-percent limitation provides a safeguard against abuse. I can find nothing in the statute itself or in the statutory scheme to justify disallowing the deduction which would seem to be clearly available to the taxpayer here simply because of the language appearing in committee reports which seem to me to be inapposite to the issue we have here.

I would allow the deduction.

FORRESTER, *J.*, agrees with this dissent.